**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3508-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

QUANTIS L. GOODE,
a/k/a QUANTIS GOOD,

    Defendant-Appellant.

_____

Argued June 9, 2021 – Decided June 30, 2021

Before Judges Alvarez and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 07-10-3549.

Ernest G. Ianetti argued the cause for appellant.

Caroline C. Galda, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney; Caroline C. Galda, of counsel and on the brief).

PER CURIAM

After a 2009 trial, a jury convicted defendants Quantis L. Goode and Darryl Davis of two counts of first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2), and related charges. Goode received an aggregate sentence of 100 years in prison with a sixty-year term of parole ineligibility. Prior to trial, upon the advice of counsel, both had also allegedly rejected a plea offer involving a maximum sentence of fourteen years in prison, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. We affirmed their convictions on direct appeal. State v. Davis, Nos. A-1176-09, A-1615-09 (App. Div. June 6, 2012), certif. denied, 213 N.J. 567 (2013), certif. denied sub nom., State v. Goode, 213 N.J. 567 (2013).

Our consolidated opinion on direct appeal recounted the facts of this drug-related, territorial dispute between defendants and the victims. Id. at 2-7, 28. We need not repeat the facts in detail here. To provide context, we recite the following synopsis of the homicides:

> Defendants—known by some in their community by the street names "Dre" (Davis) and "Ice Cream" or "Moo" (Goode)—were drug dealers plying their trade in the Baxter Terrace housing complex in Newark. Victims Rahman and Grimes were similarly at work, competing for customers on the grounds and in the hallways of Baxter Terrace. For several days prior to January 7, 2007, the four individuals were reportedly involved in a "beef" over territory, with sporadic episodes of exchanged gunfire.

Muhammad Holiday and his wife Amina were residents of Baxter Terrace on the day of the homicides. Mr. Holiday is Rahman's brother and Grimes's uncle. The Holidays were familiar with defendants but knew them only by their street names.

Around noon, Mr. Holiday met with Rahman and Grimes in his apartment to discuss their planned use of the vestibule outside of Mr. Holiday's apartment for the sale of illegal drugs. Because it was a Sunday, and Mr. Holiday's mother was expected to visit, he instructed Rahman and Grimes that "[there will] be no BS today, . . . [you] need to go somewhere," explaining that "no BS today" meant: "[n]o shooting, no drug selling, no nothing."

Just as the two victims left the apartment, while Mr. Holiday was within "two steps" of the door, he heard gunshots coming from the hallway. As Mr. Holiday ordered his wife to call 9-1-1, he peered through the door's peephole and observed Goode "running down the stairs shooting" with Davis in close proximity, and the hallway filling with the "smoke and flash" of gunfire.

Mr. Holiday dashed to a bedroom window to look outside "[be]cause [he] want[ed] to know if [his] brother got out [of] the hallway." He saw Grimes run out of the building holding a handgun while under fire from Davis. Mr. Holiday observed Grimes fire once, then drop the handgun, and eventually collapse on Orange Street. Mrs. Holiday also observed these events. Goode, who followed Davis out of the building, could be heard telling Davis to stop shooting. Mr. Holiday then saw defendants "rush through the sidewalk" as they ran away from the scene.

3

The Holidays then left their apartment and found Rahman lying in the vestibule. Once outside the building, Mr. Holiday observed defendants sprint into a van and drive away. Mrs. Holiday did not witness Goode outside, but she did see Davis jump into a "tan or beige-ish van," which drove away on Orange Street. They checked on Grimes, who was still breathing. Mr. Holiday returned inside to console Rahman as he died.

[Id. at 2-4 (alterations in original) (footnote omitted).]

Goode and Davis each filed petitions for post-conviction relief (PCR), arguing "that their respective privately-retained counsel were ineffective in failing to explain the ramifications of sentencing if they went to trial and lost, promising them they would be acquitted if they went to trial, and then mismanaging their trial." State v. Goode, Nos. A-2387-14, A-3213-14 (App. Div. Feb. 2, 2017) (slip op. at 3). Goode and Davis appealed from orders denying their respective PCR petitions without an evidentiary hearing. Ibid.

We consolidated the appeals and issued a single opinion. Id. at 2. As to Goode, we noted:

Goode submitted a certification in support of his PCR petition, which explained the interaction defendant had with his trial attorney. He contended he originally wished to take the State's fourteen-year plea offer. However, he claimed his attorney stated the sentence term was "too high" because the State lacked physical evidence and credible witnesses. His attorney told Goode he could negotiate for a ten-year prison term, but that deal never came to fruition. Goode

claimed he told his attorney he wished to testify at trial, but his attorney stated there was no need to testify because he would call witnesses on Goode's behalf in his defense. Goode also alleged his attorney told him it was error for the trial judge to allow the jury unfettered access to two audio-taped witness statements.

[Id. at 3-4.]

We then briefly outlined the facts pertinent to the PCR petitions:

The State's eyewitnesses were Muhammad Holiday and his wife Amina. Another witness at the scene, Ronald Alston, was aligned with defendants. A Newark detective took an audiotaped statement from both Holiday and Alston. "Alston maintained [at trial], however, that he was drunk when he gave this statement, that the police told him what to say, and that he never saw Goode that morning." [Davis, slip op. at 33.] Alston's statement to the police was played for the jury in open court and admitted into evidence in a redacted form. Upon admitting it into evidence, the trial judge mentioned, with no objection from counsel, that the audiotape of Alston's testimony would go back to the jury room. Holiday's audio statement was also admitted into evidence, but only at the end of the trial after an off-the-record discussion. All parties eventually agreed to admit the Holiday tape into evidence. Davis's counsel advocated for the statement's admission into evidence as he wished to use it in his summation to contradict Holiday's in-court statements.

[Id. at 5-6 (first alteration in original) (footnote omitted).]

5

Based on the certifications submitted, the PCR judge determined Goode and Davis had not established a prima facie case on ineffective assistance of counsel and denied both petitions without an evidentiary hearing. Id. at 6. Viewing the facts in a light most favorable to defendants, we reversed and remanded both cases for an evidentiary hearing because "the issue involve[d] what discussions took place between defense counsel and their clients. The certifications did not resolve the [material] factual issues." Id. at 3, 10. We explained:

> Particularly in these circumstances, where the difference between pleading guilty prior to trial and being found guilty at trial resulted in a real-time period of incarceration of approximately fifty years in prison—if defendants live so long—the PCR judge mistakenly exercised his discretion in not holding a hearing to allow defendants to delve further into the discussions between counsel and clients regarding the consequences and risks of proceeding to trial. Both defendants certified that their lawyer did not fully explain the ramifications of proceeding to trial. [Davis's] lawyer lent some support to this claim by stating that his client had wanted to accept the plea agreement, but followed the attorney's advice. The State did not counter this argument with transcripts of explanations placed on the record or forms completed by defendants indicating that they knew the sentencing exposure they were facing by rejecting the plea offers.
>
> . . . .

A-3508-19

> Given the disparity between the sentence offered by the State in the plea agreement, and the sentences defendants are now serving, defendants are entitled to further exploration of their claim that their counsel did not fully inform them of the consequences of rejecting the plea offer. We therefore remand for an evidentiary hearing as to this issue.
>
> [Id. at 11-12.]

We rejected the other arguments raised by Goode and Davis. Id. at 12-13.

Before the evidentiary hearing took place, defendant's new counsel requested an opportunity to review the court's file because defendant's personal file revealed a pretrial memorandum with several substantive errors, omissions, and no signature page. The court's copy of the pretrial memorandum was complete, initialed by defendant, and fully executed. Given the discrepancies between the pretrial memoranda, defendant sought leave to amend the original PCR petition to assert additional arguments related to trial counsel's performance and deficiencies in pretrial proceedings. With consent of the State, the application to amend was granted.

In his certification, Goode alleged that trial counsel "failed to properly complete the pretrial memorandum with [him] as is required by [Rule] 3:9-1(f)." In addition, he asserted "no judge reviewed the pretrial memorandum with [him] on the record as is also required by the rule." Goode explained that the charges

he faced were incorrectly listed in the pretrial memorandum since "one count of murder was omitted." Goode further explained that the pretrial memorandum contained incomplete information about his sentencing exposure because it did not indicate that he could potentially receive "consecutive life sentences and consecutive periods of parole disqualification." Goode claimed that these deficiencies were important because his trial attorney told him he only needed to defend one of the two murder charges. Defendant further claimed that if he "had been told by a judge on the record in open court that [he] was facing multiple life sentences that could run consecutively, [he] would have told the judge [he] wanted to plead guilty."

On remand, the PCR judge conducted a two-day evidentiary hearing. Muhammad Bashir (Goode's trial counsel), Martin Goldman (Davis's trial counsel), and Romesh Sukhdeo (the assistant prosecutor who tried the case) testified for the State. Goode and Davis testified on their own behalf. The judge issued a March 31, 2020 order and accompanying written decision denying both petitions. We focus on his findings and conclusions relevant to Goode.

Sukhdeo testified "that he did not believe a formal plea offer was extended to either one of the defendants." He explained the steps that had to be taken to extend a formal plea offer, which involved "the victims' family, the prosecutor's

homicide director, the investigative chief assistant prosecutor, and the county prosecutor." Sukhdeo also explained that even if he engaged in plea negotiations with defendant's trial counsel, he lacked authority to extend an offer. The judge stated that Sukhdeo "did not recall either counsel advising him that a defendant was willing [to] plead guilty for a recommendation of a sentence of a certain number of years."

Goldman testified that he engaged in plea negotiations with Davis a few days before trial and advised Davis that the prosecutor offered him "a plea to a downgrade [of] reckless manslaughter" and fourteen years. However, Goldman did not recall whether Davis received a written or typed formal plea offer from the State. There was also no counteroffer because Davis told him right from the beginning that he was not guilty. Goldman further testified that when he told Davis about the offer, Davis considered taking the offer because he did not want to expose himself to the possibility of going to prison for the rest of his life. Goldman also recalled telling Davis that the State's case was very weak and providing his assessment of the case.

Bashir had no recollection of receiving a formal plea offer from the State, no recollection of telling Goode that "we can resolve this by way of a plea," and no recollection of talking to Goode about a number. Bashir did not "recall a

A-3508-19

number being put on the table, and . . . he did not put a number on the table." Bashir did not propose a number to the prosecutor because Goode did not want to take a plea.

As for Goode's testimony, the judge noted Goode "characterized plea discussions as fruitless and described the discussions as follows: [Bashir] told him the plea offer was [fourteen] years and explained that it was his duty to tell [him] and if the judge asked about this and he hadn't advised [him], [Bashir would] get in trouble." Goode testified about asking his attorney how much time he would have to serve and recalled Bashir telling him eleven or twelve years, which Goode found acceptable. Goode testified that Bashir told him that even eleven or twelve years "was too much time" and then provided Goode with an assessment of the weaknesses in the State's case, noting that Goode could receive a sentence as low as five years, subject to NERA.

Both Goode and Davis claimed trial counsel advised them of a plea offer of fourteen years imprisonment subject to NERA in return for a guilty plea to reckless manslaughter. Goode testified trial counsel advised him of the alleged plea offer while reviewing discovery with him at the county jail about twelve months after he was incarcerated. However, his trial counsel recalled that Goode did not want to accept a plea offer. Sukhdeo testified "he did not recall any

discussions regarding any guilty plea offer in general or any discussions regarding a guilty plea to reckless manslaughter for a sentence of fourteen years in particular, [and] he did not believe he made a plea offer on the part of the State." Sukhdeo confirmed that the State made no formal plea offer to Goode. Moreover, the pretrial memorandum revealed that the State made no plea offer. Lastly, the judge noted that Davis's testimony about "discussion of the purported offer of reckless manslaughter for a sentence of fourteen years–beyond the top of the sentence range for such a crime–strain[ed] credulity."

The judge found more credible the testimony of the prosecutor and Goode's trial counsel that "there was no plea offer according to their respective recollection[s]," which were corroborated by the pretrial memoranda. The judge questioned defendants' credibility, noting they parroted Davis's trial counsel. The judge explained:

> The credibility of each [defendant was] subject to impeachment by the interest of each in the outcome of this proceeding, their repeated opportunities to collaborate with one another in anticipation of their testimony while brought to court and otherwise maintained in custody together, the demonstrable willingness of . . . Davis to disregard the truth, their respective prior indictable convictions, and the contradictions of their claims by the trial prosecutor and . . . Goode's trial counsel.

The judge found defendants failed to show by a preponderance of the evidence that the State extended a plea offer. Accordingly, they suffered no prejudice. The judge emphasized that "the purported plea offer to a downgrade of reckless manslaughter is itself questionable in that a sentence of fourteen years exceeded the ten[-]year upper limit of the sentence for reckless manslaughter." Moreover, Goode's trial counsel did not recall discussing any plea offer with defendant but instead specifically recalled defendant not wanting to accept a plea offer. Therefore, Goode and Davis failed to demonstrate deficient performance by trial counsel for failure to secure the purported plea offer.

Next, the judge addressed Goode's additional claim regarding the omission of a pretrial conference. The judge, with the consent of the State, permitted Goode to amend his petition to include his claim regarding the omission of a pretrial memorandum. The judge noted "the parties agree[d] that a pretrial memorandum was not presented to the pretrial judge or the trial judge at a pretrial conference as required by [Rule] 3:9-1(f)."

The judge explained that although "the judge should ask the prosecutor to describe the case without prejudice and should advise the [defendant] of the maximum sentence exposure he would face if convicted of the charges, . . . [t]he

12

State cannot be compelled to make a plea offer." "Therefore, irrespective of the description of the case or sentence exposure, in the absence of a plea offer for [Goode] to consider, the actual benefit of the pretrial conference beyond notice of the trial date [was] minimal." Absent a plea offer, conducting a pretrial conference and reviewing the pretrial memorandum "would have been to no avail to [Goode]." Thus, "Goode did not suffer any prejudice as a result thereof."

In this appeal, Goode argues:

> POINT I
>
> THE PCR JUDGE ERRED WHEN HE CONCLUDED THE OMISSION OF A PRETRIAL CONFERENCE DID NOT PREJUDICE DEFENDANT . . . .
>
> A. Due Process Requires a Pretrial Conference
>
> POINT II
>
> TRIAL COUNSEL WAS INEFFECTIVE BECAUSE HE FAILED TO COMPLETE THE PRETRIAL MEMORANDUM CORRECTLY AND FAILED TO INFORM DEFENDANT OF HIS TRUE PENAL EXPOSURE.
>
> A. The Applicable Law
>
> POINT III
>
> THE PCR JUDGE'S RELIANCE ON THE ABSENCE OF A FORMAL PLEA OFFER WAS ERRONEOUS.

A-3508-19

We find no merit in these arguments and affirm substantially for the reasons expressed by the PCR judge in his written decision. We add the following comments.

Both the United States Constitution and New Jersey Constitution guarantee the right of assistance of counsel to persons accused of a crime. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. The right of counsel includes the right of effective counsel. State v. Cottle, 194 N.J. 449, 466 (2008) (citing State v. Norman, 151 N.J. 5, 23 (1997)).

To establish a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), adopted by the Court in State v. Fritz, 105 N.J. 42, 58 (1987). The test requires a showing that trial counsel's performance was deficient and, but for the deficient performance, the result would have been different. Strickland, 466 U.S. at 687. To prove ineffective assistance of counsel, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687. The petitioner must overcome a strong presumption counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To prevail, the petitioner must establish, by "a preponderance of the credible

evidence," that he is entitled to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)).

> If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.
>
> Lafler v. Cooper, 566 U.S. 156, 168 (2012).

Therefore, when a defendant claims that ineffective advice led him to reject a plea, the defendant must show a reasonable probability that but for that advice: (i) he "would have accepted the plea"; (ii) "the court would have accepted its terms"; and (iii) the result "would have been less severe than the judgment and sentence that in fact were imposed." Id. at 164. However, when "no plea offer is made," the issue of ineffective assistance of counsel in considering or rejecting a plea offer "simply does not arise." Id. at 168.

Goode argues that trial counsel was ineffective because he failed to complete the pretrial memorandum correctly and failed to inform Goode of his maximum sentence exposure. He points out discrepancies between his copy of the pretrial memorandum and the court's copy, and notes that both copies mistakenly listed count three as an unlawful possession of a firearm charge instead of a murder charge and failed to indicate he was facing consecutive life

15 A-3508-19

sentences. In addition, Goode claims "there is no evidence" that counsel informed him that he was facing life without parole. Goode claims he was denied due process and urges this court to reverse and remand his case for proceedings consistent with Lafler.

"In reviewing a PCR court's factual findings based on live testimony, an appellate court applies a deferential standard; it 'will uphold the PCR court's findings that are supported by sufficient credible evidence in the record.'" State v. Pierre, 223 N.J. 560, 576 (2015) (quoting Nash, 212 N.J. at 540). A reviewing court will also grant deference to the PCR judge's firsthand assessment of witness credibility. Ibid. (quoting Nash, 212 N.J. at 540). We afford no deference to a PCR court's interpretation of the law and review it de novo. Ibid. (quoting Nash, 212 N.J. at 540-41).

Applying these standards, we accord deference to the judge's factual and credibility findings, which are supported by substantial credible evidence in the record. We, likewise, find that the judge's legal conclusions are consonant with applicable law and, thus, discern no basis to disturb his ruling.

We note that trial counsel credibly testified that he recalled informing Goode that he was facing two separate murder charges. In addition, the trial court's copy of the pretrial memorandum, which was fully executed by the

16

assistant prosecutor, defense counsel, and the judge, and signed and initialed by Goode, stated his maximum sentence exposure was life without parole.[1] Moreover, in answer to question nine regarding "the plea agreement offered including sentencing recommendations," both copies stated, "no offer."

Goode's trial counsel further testified that the State never approached him with a plea offer and that he did not try to initiate negotiations with the State because "defendant didn't want to take a plea." Trial counsel explained, "my recollection is that in discussing this particular case with the defendant, that he was not open to a plea."

We recognize the pretrial conference requirements imposed by Rule 3:9-1(f) and its effect on the plea cutoff under Rule 3:9-3(g). Here, however, the State extended no plea offer to defendant. Therefore, any inaccuracy in the pretrial memorandum did not prejudice Goode, as he still would have faced a maximum sentence exposure of life regardless of whether he proceeded to trial or entered an open plea to the charges. Lafler does not apply because "no plea offer [was] made." Lafler, 566 U.S. at 168. The judge correctly surmised that

---

[1] Goode's copy stated the maximum sentence was life. The maximum parole ineligibility period was not filled in. Goode initialed or signed each of the first three pages but page four of his copy is not included in the record.

even an accurately prepared pretrial memorandum and rule-compliant pretrial conference would not have changed the outcome.

Goode failed to show that there was a "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 694). The judge properly denied PCR since Goode failed to prove that trial counsel's purported errors prejudiced him.

In addition, Rule 3:22-4(a) bars Goode's claim that he was denied due process because the trial court failed to conduct a pretrial conference and review the pretrial memorandum with him. Rule 3:22-4(a)(1) provides:

> Any ground for relief not raised in the proceedings resulting in the conviction, . . . or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds . . . that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding . . . .

Goode does not claim ineffective assistance of appellate counsel. Since this claim could have been raised on direct appeal, Goode cannot circumvent this procedural bar by attiring his "petition in ineffective assistance of counsel clothing." State v. Moore, 273 N.J. Super. 118, 125 (App. Div. 1994).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3508-19